A. A. MASON, Appellant, v. IOWA CENTRAL RAILWAY COMPANY, Appellee.

**Eminent domain:** ADJUDICATION. Where three appeals in condemnation proceedings were consolidated for the purpose of trial, in one of which the sheriff's jury returned no award of damages and plaintiff elected to accept the award in the other two cases, and defendant after the sustaining of demurrers to its answers in the other two cases elected to rely on the answers, judgments confirming the two rewards did not constitute an adjudication of damages in the case in which no award was made.

**Condemnation:** PLEADINGS. In condemnation proceedings formal pleadings are not required, but when adopted the ordinary

rules of pleading apply, and no affirmative defense not pleaded can be relied upon.

**Estoppel:** EVIDENCE. In a proceeding to assess the damages to land over which a right of way had been appropriated, the evidence is held insufficient to establish a prior settlement and payment operating as an estoppel *in pais* so as to bar the proceeding.

*Appeal from Monroe District Court.*— HON. ROBERT SLOAN, Judge.

TUESDAY, SEPTEMBER 25, 1906.

THE opinion states the facts.— *Reversed.*

*Mason & Mason,* for appellant.

*George W. Seevers* and *T. B. Perry,* for appellee.

WEAVER, J.— Prior to the year 1870 the Iowa Central Railway Company procured the right of way for a railroad between the towns of Albia and Moulton in the State of Iowa. After grading the roadbed the title thereto was transferred to the Central Railroad Company of Iowa. Not being used or operated by said company, the said right of way was in July, 1879, taken possession of and condemned by the Moulton & Albia Railroad Company, which laid its tracks thereon and operated the same or a portion thereof as a railway until the year 1888, and then abandoned its further use. In the year 1898 the Iowa Central Railway Company undertook to condemn the said right of way anew, instituting the proceedings by application to the sheriff of the proper county and notice to the owners of the several tracts of land affected thereby. Numerous assessments or awards of damages were made in these proceedings by the sheriff's jury. From most of these awards the railway company appealed to the district court, and from some of them the landowners also appealed. In the district court the railway company filed pleadings,

making the point that as the right of way had originally been condemned or purchased by the Iowa Central Railroad Company, and as the damages so paid to the landowners had never been returned or refunded, neither said owners nor their grantees were entitled to recover further damages on a recondemnation of said right of way by the present company, notwithstanding its abandonment for a period of ten years or more. To this plea the landowners in each of the several cases demurred. The demurrer in one of these cases was sustained, and an appeal taken therefrom to this court; further proceedings in the other cases being by agreement suspended to await the result of said appeal. The ruling of the district court was affirmed by us February 14, 1902. See *Remey v. Railroad Co.,* 116 Iowa, 133.

The foregoing history will assist materially in making clear some of the features in the controversy now at bar. The plaintiff herein, A. A. Mason, was the owner of several tracts of land situate in sections 22 and 27, township 72, range 17 in Monroe county, immediately adjoining the city of Albia, and across which the right of way was sought to be condemned. Notices of such proceedings were served upon him as to these several tracts, and for the sake of convenience we will hereafter designate these several proceedings by numbers as 1, 2, and 3. Numbers 1 and 2 applied solely to tracts of land in section 22 and number 3 to a forty-acre tract of land known as " the homestead " in section 27. Some complication or uncertainty is now suggested as to the real ownership of tract No. 1, but the condemnation was prosecuted against Mason as the owner, and the uncertainty referred to in no manner affects the result in this case. The record shows that in proceeding No. 1 the sheriff's jury assessed plaintiff's damages at $125, and in No. 2 at $350. In No. 3, which applied to the homestead tract in section 27 there is no record evidence that any finding or assessment of damages was ever made. In all the other cases the sheriff, being notified of the appeal, filed certified copies of the appraise-

ments in the district court as provided by the statute (Code, section 2009); but no such filing appears to have been made in proceeding No. 3, nor is such a document found or produced in the office of the clerk or sheriff. While the sheriff and some of the members of his jury testify to having viewed this tract and feel quite sure they assessed the damages thereon, none of them seem to have any clear recollection of the matter. None can remember in fact what the award was, or whether the same was reduced to writing and preserved as required by law. The only suggestion as to the amount is a statement of the plaintiff that some neighbor, not a juror or officer, told him that an award had been made of $350. It appears, however, that both plaintiff and the railway company, acting on the supposition that an award had been made, served notices of appeal to the district court. The two attorneys who then represented plaintiff testify that they never saw any award or appraisement by the sheriff's jury as to the forty-acre tract, and have no knowledge that any was made. They explain their act in giving notice of appeal by saying that, at the same time they were appealing in several different cases arising from the condemnation of this right of way and taking it for granted that awards had been made in all of them, they prepared the notices of appeal in all by obtaining the description of the several tracts from the condemnation notices in their possession and without going to the sheriff's office to examine or verify the awards. The railway corporation also served a notice of appeal from the alleged finding of the sheriff's jury as to the forty-acre tract, but the notice does not state the amount of the damages allowed, nor does the company in this case offer any evidence as to such amount. The sheriff appears not to have certified any record or award of any kind to the district court upon this appeal, nor does such appeal appear ever to have been docketed in the district court.

Appeals were also taken by both parties from the award in No. 2 and by the company alone in No. 1. During the

pendency of the appeal in the Remey case, the cases now under consideration were passed from term to term of the district court, apparently without further order of the court or special attention by the parties interested. Soon after the decision of the Remey appeal was announced, an order was entered by the district court whereby cases No. 3,780 (company's appeal in condemnation No. 1), No. 3,785 (plaintiff's appeal in condemnation No. 2), and No. 3,784 (plaintiff's appeal in condemnation No. 3) were consolidated for trial with case No. 3,778 (company's appeal in condemnation No. 2). Following the rule of the Remey case, the district court sustained the demurrer to company's answers in the several cases in which the pleading was filed, and, the company electing to stand upon said pleading, judgment was entered by the court confirming the assessment of damages by the sheriff's jury in condemnations Nos. 1 and 2.

In further explanation of this entry it should also be said that before these entries of judgment the plaintiff elected and had entered of record his election to accept the awards made by the sheriff's jury, with interest, thus in effect abandoning or dismissing his appeals and leaving the cases pending on the company's appeals alone. No entry of any kind was made in condemnation No. 3 after the minute noting the order of consolidation above mentioned. This omission doubtless has its explanation in the fact that there was nothing whatever in the record upon which to enter any finding or judgment.

We have failed to mention at its proper place in the chronological order of events the fact that at some time prior to the entry of the judgments aforesaid the company filed two answers in the consolidated proceedings; one being designated as applying to both cases 3,778 and 3,785 (being the two appeals in condemnation No. 2), and the other as applying to both case 3,780 (condemnation No. 1) and 3,784 (condemnation No. 3). Whether this coupling in one pleading an answer to the demand for damages to two separate tracts

was a mistake is not shown, but from the fact that the answer mentions only the land in section 27 it is more than probable that it was drawn and filed under the misapprehension that the two cases last above mentioned represented the two appeals taken or attempted to be taken in condemnation No. 3. It should also be said that at the time the appeals in Nos. I and 2 were taken by the railway company it deposited with the sheriff as provided by statute the amount of the two awards appealed from, aggregating $475. If any deposit was made to cover the damages in No. 3, no evidence thereof appears in this record.

In September, after the entry of the judgments aforesaid in April, 1902, the railway company deposited with the sheriff the sum of $115.65, being the amount of interest accrued on the $475 originally deposited, taking his receipt therefor and describing this last payment as being " for the difference between the damages awarded by the commissioners in condemnation proceedings and damages awarded on appeal by jury in the district court of Monroe, Iowa, in the cases of *A. A. Mason v. Iowa Central,* 3,778 and 3,780, for right of way over N. W. ¼ of N. W. ¼ of section 27 — 72 — 17; also the S. W. ¼ of the S. W. ¼, section 22 — 72 — 17, Monroe county, Iowa, Hocking Branch." Here, too, it will be observed that the district court cases mentioned in this voucher as Nos. 3,778 and 3,780 involve only condemnations Nos. 1 and 2, which have reference solely to lands in section 22, but in extending the description the voucher is made to appear to include or cover damages to land in section 27. No person representing the plaintiff was present at the making and delivery of this voucher. Thereafter, the plaintiff refusing to give any receipt or voucher acknowledging payment of damages to land in section 27, the sheriff paid over to him the deposit in his hands of $590.65, taking his receipt therefor in the following form: " Received of John Doner, sheriff of Monroe county, Iowa, the sum of $590.65 in full payment for the damages awarded me by the

sheriff's jury on the 15th day of August, 1898, in cases number 3,778 and 3,780 of the district court of Monroe county, Iowa, as shown on the law docket. The above amount being principal as originally deposited in the hands of the sheriff in said cases 3,778 and 3,780, and interest thereon at six per cent. per annum from the 15th day of August, 1898, as awarded by the district court of Monroe County, Iowa. A. A. Mason."

Prior to this time it was discovered by plaintiff or his counsel that no record of any condemnation of the land in section 27 existed, and they insisted that the damages to said tract remained unadjudicated and unsettled. The company refusing to accede to this position, and claiming that the sum of $590.65 paid by it was in satisfaction of all claims for damage to all of defendant's land, the plaintiff on July 28, 1903, instituted new proceedings to have his said damages assessed. From the appraisement made and returned by the sheriff's jury the company appealed to the district court, where it filed an answer setting up its version of the history of the prior condemnations, the substance of which is hereinbefore set out, and alleges that plaintiff is thereby estopped to maintain this proceeding. It further alleges that the sum of $590.65 aforesaid was paid and received by plaintiff in full settlement and satisfaction of all his claims for damages. The cause seems to have been tried to the court as in equity, and at the close of the testimony the court entered a decree for the defendant, dismissing the proceedings and taxing the costs to plaintiff. From this decree the plaintiff has appealed. This extended and perhaps tedious statement of the facts having direct or collateral bearing upon the merits of this appeal renders unnecessary further reference to the testimony except in a few matters of detail.

We do not understand counsel for appellee as seriously contending that plaintiff's claim for damages to the homestead property has been barred by prior express adjudication. Nor could such claim be well insisted upon. Except as it

rests upon the indistinct and unsatisfactory recollection of
certain witnesses, there is no evidence what-
ever that the damages were ever assessed or
appraised by the sheriff's jury in the prior
proceedings.　If there was an attempt at such appraise-
ment, there is no evidence of any kind that it was reduced to
writing or filed or preserved in the office of the sheriff or of
the clerk of the district court as provided by law.　Indeed,
there are many circumstances tending to sustain the con-
clusion that by mistake, oversight, or otherwise this particu-
lar tract was lost sight of by the sheriff and jury in making
up the awards on the numerous tracts owned by plaintiff and
others then under process of condemnation.　In the multi-
plicity of cases it is perhaps not strange that in completing
their labors and making up their findings the jury should
have overlooked the fact that the two appraisements made for
the plaintiff of land in section 22 did not cover all the tracts
upon which he was entitled to damages.　The omission is
further indicated by the fact that the company, having ap-
pealed from condemnations Nos. 1 and 2, promptly deposited
with the sheriff the amount of the jury's award as the law
provides, but so far as now appears no deposit was ever made
of any amount for damages to the homestead tract.　More-
over, there is no judgment of the district court prior to the
proceeding now at bar which expressly professes to confirm or
deny or in any manner to pass upon the matter of damages to
this tract.　The insistence of appellee is in effect, that the
money paid by it to the appellant was in settlement of all his
claims, and that he is estopped by the record and by his con-
duct from now denying that such payment was full and com-
plete.　This claim is based upon the proposition that, as that
appeal or attempted appeal in condemnation No. 3 was con-
solidated with Nos. 1 and 2 in the case No. 3,778, it must be
implied or inferred that the judgment entered in the latter
case was intended to embrace all of the claims represented in
all of the appeals, and by the further proposition that, even if

1. EMINENT DO-
MAIN: adjudi-
cation.

by any mistake or oversight no appraisment of the damages to the homestead tract had ever been made, yet the money received by plaintiff was paid to him by way of settlement and satisfaction of all his claims against the company, and that he received it knowing that it was being paid to him with that understanding. The judgment referred to cannot be given the effect claimed for it. The consolidation of the several cases was made for the purposes of trial only, and the issues, so far as any were joined, remained as distinct and separate as before. Had the cases gone to trial, the only effect of the consolidation would have been to enable the parties to try the several cases to the same jury and at the same time; but no trial was had. Plaintiff's consent, entered of record, to accept the awards made by the sheriff's jury, eliminated his appeal and left the cases standing solely upon the company's appeals. These appeals were, in turn, decided by the court's ruling upon the demurrer to the company's answer — the ruling being made, not in the consolidated case, but separately and independently in each of the condemnations Nos. 1 and 2 — and upon the election of the company to stand upon its pleading separate judgments were entered therein. How these entries can be held to have operated as an adjudication of the claim for damages in No. 3 we are not able to understand. The judgments were not entered by consent, nor upon any agreement or stipulation of settlement, but over the company's objection, and to each entry it preserved an exception. The adjudication in each instance had reference alone to the issue of law presented in the demurrer in the particular case in which the ruling was entered, and by no process of inference or implication can it be fairly made to conclude or determine any claim or claims based on another and different condemnation.

Nor do we find any basis for holding plaintiff barred by an estoppel in *pais*. In the first place, no such defense was pleaded. It may be true that in condemnation proceedings no formal pleadings are required, and that even

without an answer all proper defenses are available to the defendant; but, where such defendant undertakes to plead formally and files a written answer, we think the ordinary rules of pleading should prevail, and that no affirmative defense not pleaded can be relied upon.

2. Condemnation: pleadings.

But, waiving this objection for the present, we find no fact in evidence on which an estoppel can be based. There is certainly none in the circumstances above related under which the judgments against appellant were entered. We reach the same conclusion when we consider the circumstances under which appellant concluded to waive its right of appeal to this court and pay the assessed damages. The money was paid by it to the sheriff on its own motion, without any record entry of settlement or compromise of any kind. The insertion in the voucher taken from the sheriff of a statement that the money was deposited in part for the damages for right of way over the land in section 27 could have no effect to bind or estop the appellant. In no sense of the word was the sheriff the agent of the appellant, but was in a very just sense the agent of the appellee, who placed the money in his hands. It is shown, without dispute, that when the appellant appeared to receive the money he expressly refused to accept it, save as a payment of the awards made in condemnation Nos. 1 and 2. On this condition it was paid over by the sheriff and receipted by the appellant. It is true that counsel for appellees, testifying as witnesses, insist that there were oral negotiations or conversations respecting a settlement, and that the money was paid with the understanding that all claims of the appellee were thereby adjusted, but this contention is met with at least equally positive testimony to the contrary by the counsel on the other side, while the version of the transaction by the latter is strongly corroborated by the record itself and by the proved circumstances attending the paying over of the money. It has further corroboration in the fact that the

3. Estoppel: evidence.

amount paid is the precise sum of the damages assessed in condemnations Nos. 1 and 2, with interest thereon to date of payment. It also finds support in the fact that in depositing the balance of interest with the sheriff the appellee described it as being for damages assessed in causes Nos. 3,778 and 3,780, which are the cases in which the judgments were entered confirming the appraisement by the sheriff's jury in said condemnations Nos. 1 and 2, neither of which had any application to the homestead tract. The burden of establishing a settlement or compromise not shown by the record is upon the appellee, who is the party asserting it, and conceding, as we think we must, equal credibility to the witnesses for and against the proposition, we are constrained to say that the defense has not been made out. In the final argument appellee returns to the proposition that the land mentioned in condemnation No. 1 did not belong to plaintiff and argues that the payment of $125 and interest assessed in his favor in that case is not to be treated as damages due him, but rather as the price or consideration for the alleged settlement; but there is nothing in the record on which to bottom such a conclusion. The appellee itself instituted the condemnation of this land against appellant as the owner, and while it appears, indirectly, that appellant was not then the real owner of the title, it also appears that the real owner consented to allow the condemnation to proceed as begun, and that, when concluded, the damages paid thereon to the appellant were by the latter paid over to and accepted by said owner. Such being the case, the latter is bound and estopped by the condemnation, and the fact that appellant did not hold the title to the land is, as already suggested, a matter of no moment in this controversy.

We conclude that appellant is not estopped to demand an assessment of the damages caused by the condemnation of appellee's right of way across his homestead, and that the decree of the district court denying such right must be, and is, reversed, and the cause remanded for further proceedings in harmony with this opinion.— *Reversed.*